IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| ANN JUANITA THOMASON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 6:15cv15 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Ann Juanita Thomason ("Thomason") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381-1383f. Thomason alleges that the Administrative Law Judge ("ALJ") erred by: (1) failing to obtain a psychological consultative evaluation; (2) improperly evaluating the opinion of the medical consultative examiner; (3) failing to consider the impact of Thomason's obesity; and (4) improperly assessing Thomason's credibility. I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND DENYING** Thomason's Motion for Summary Judgment (Dkt. No.14) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 16).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Thomason failed to demonstrate that she was

disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Thomason protectively filed for SSI on May 23, 2012, claiming that her disability began on that same day due to back problems, knee pain, high blood pressure, depression, and migraines. R. 12, 161, 180. The state agency denied Thomason's applications at the initial and reconsideration levels of review. R. 60–67, 69–79. On January 22, 2014, ALJ Ann V. Sprague held a hearing to consider Thomason's claims for SSI. R. 25–52. Counsel represented Thomason at the hearing, which included testimony from vocational expert Robert Jackson.

On April 8, 2014, the ALJ entered her decision analyzing Thomason's claim under the familiar five-step process[2] and denying her claim for benefits. R. 12–21. The ALJ found that

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

2

Thomason suffered from the severe impairments of obesity with back and neck pain, and depression.[3] R. 14. The ALJ found that Thomason had the following limitations in the broad areas of functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 CFR, Part 404, Subpart P, Appendix 1: mild restriction in activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, but no episodes of decompensation of extended duration. R. 15–16; 20 C.F.R. § 416.920a(c).

The ALJ determined that Thomason's impairments did not meet or medically equal a listed impairment, and specifically that Thomason's depression did not meet Listing 12.04. R. 15–16. The ALJ concluded that Thomason retained the residual functional capacity ("RFC") to perform a limited range of light work.[4] R. 17. The ALJ found that Thomason could only occasionally climb stairs and ramps, balance, bend, stoop, kneel, crouch, and crawl, and could never climb ladders, ropes, and scaffolds. She should avoid concentrated exposure to unprotected heights, dangerous equipment, and vibrations. The ALJ also limited Thomason to simple, routine job tasks with only occasional interaction with others. The ALJ determined that Thomason could perform jobs that exist in significant numbers in the national economy, such as cleaner and packer. R. 20. Thus, the ALJ concluded that Thomason was not disabled. R. 21. Thomason appealed the ALJ's decision and the Appeals Council denied her request for review on May 8, 2015. R. 1–5.

---

[3] The ALJ found that Thomason's migraines were a nonsevere impairment and that her knee pain was not a medically determinable impairment. R. 15.

[4] An RFC is an assessment, based upon all of the relevant evidence, of what a claimant can still do despite her limitations. 20 C.F.R. § 404.1545. Descriptions and observations of a claimant's limitations by her and by others must be considered along with medical records to assist the Commissioner in deciding to what extent an impairment keeps a claimant from performing particular work activities. Id. The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567(a).

3

# ANALYSIS

## A. Medical History

Thomason was seen in October 2010 at Village Family Physicians complaining of hypertension, headache, and depression. R. 217. Thomason indicated that she had been out of her medication for approximately four days and experienced increased depression and crying. Id. She was prescribed Celexa and Xanax for her depression, Lortab for her headaches, and Hydrochlorothiazide for hypertension. R. 220. She returned in November and December 2011 with continued complaints of hypertension and headaches, as well as back and joint pain and depression. R. 213. On examination, she had pain and spasm in her low back and pain and swelling in her knee. R. 211. In August 2012 and January 2013, Thomason returned to Village Family Physicians for a medication refill and complained of headaches, back and joint pain, as well as an inability to fall asleep. R. 225, 254. On examination, Thomason was obese, but had normal posture and gait, and normal muscle tone and strength in her arms and legs. R. 227. Her mental status exam indicated that she had appropriate mood and affect, normal judgment and insight, and could perform basic computations and apply abstract reasoning. Id.

On June 15, 2013, Sung-Joon Cho, M.D. performed a medical consultative evaluation on Thomason. R. 268–71. Dr. Cho noted that Thomason had complained of chronic knee and back pain since she had been rear-ended in a motor vehicle accident approximately 10 years previously, when her knee hit the dashboard. Dr. Cho indicated that Thomason walked with a slow but "otherwise unremarkable" gait and without assistive devices. He also indicated that Thomason had "some problems with reading." R. 269. On physical exam, Thomason was 5'3" tall and weighed 209 pounds and Dr. Cho noted that she was "limited by her obesity" making it difficult for her to walk on her tip-toes and squat. However, her motor function was a full 5/5 in

4

the upper and lower extremities, with no joint effusion or significant crepitus in her knee, and no evidence of major inflammation or instability, and her straight leg test was negative. R. 270. Dr. Cho also noted full range of motion except for lumbar flexion, lumbar extension, and lateral flexion. Dr. Cho found that Thomason's affect, thought content, and memory were adequate, but that her general fund of information was limited consistent with her ninth grade education, and she had difficulty counting by three's.[5] Dr. Cho diagnosed Thomason with obesity, chronic low back pain, degenerative joint disease of the knee exacerbated by obesity, and illiteracy. Id. Dr. Cho imposed the functional limitations of maximum standing/walking of two to four hours and maximum lifting of 10 pounds frequently and 30 pounds occasionally. R. 270–71. He indicated that Thomason should only occasionally balance, stoop, kneel, crouch, and crawl and should avoid climbing. R. 271.

In September 2012, Richard J. Milan, Jr., Ph.D., state agency psychologist, indicated that Thomason's mental status examinations were within normal limits and her depression appeared well controlled with medication. R. 63. Dr. Milan stated that Thomason "retain[ed] the ability to handle all levels of work tasks." R. 63. Similarly, in June 2013, Hillery Lake, M.D., state agency physician, found that Thomason's mental impairment was non-severe, noting that Thomason's mental status exams were normal and she attended regular education classes in school. R. 74. State agency physicians Michael Hartman, M.D. and Robert McGuffin, M.D. reviewed the record in September 2012 and June 2013, respectively. Dr. Hartman found that Thomason had the ability to perform work at the medium exertional level, while Dr. McGuffin found that Thomason could perform a limited range of light work, with postural limitations due to her knee and back pain. R. 66, 76–77.

---

[5] Thomason testified at the hearing that she stopped attending school at age 14 due to pregnancy. R. 46.

5

### B. Psychological Consultative Evaluation

Thomason argues that the ALJ erred by refusing to grant her request for a psychological consultative examination with intelligence evaluation at the January 22, 2014 hearing, based on Thomason's allegations of illiteracy. Following the hearing, the ALJ reviewed Thomason's school records and denied Thomason's request, stating that the "record is sufficient to support a decision on this claim." R. 12. Thomason asserts that this denial resulted in a failure to fully develop the record.

Under the regulations, an ALJ has discretion in deciding whether to order a consultative examination. Bishop v. Barnhart, 78 F. App'x 265, 268 (4th Cir. 2003); see also 20 C.F.R. § 404.1519a. A consultative exam is only needed when the evidentiary record before the ALJ is inadequate. France v. Apfel, 87 F. Supp. 2d 484, 489 (D. Md. 2000) (citing Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986)); see also 20 C.F.R. § 404.1519a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim.") A consultative examination may be used to "resolve any conflicts or ambiguities within the record" or "to secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision." Kersey v. Astrue, 614 F. Supp. 2d 679, 693 (W.D. Va. 2009) quoting 20 C.F.R. § 404.1519a(b).

The record before the ALJ was adequate to support her decision and a consultative psychological evaluation with intelligence evaluation was not required. The record contained Dr. Cho's consultative report, records from Village Family Physicians including mental status exam, Thomason's school records, and the opinions of state agency psychologists Drs. Milan and Lake, who reviewed Thomason's depression. Though Thomason testified at the hearing that she

6

was in special education classes for spelling and reading, Thomason indicated in her Disability Report that she had never attended special education classes, and her school records indicate that she was never required to repeat a grade, or receive special education.[6] R. 47, 181, 279–87. The ALJ wrote that, "[a]lthough the evidence reflects low test scores and grades, [Thomason's] IQ in second grade was 80 and she progressed through the grades without special education support." R. 12. The ALJ found that Thomason's medical records do not support a diagnosis of illiteracy, and noted that "the diagnosis is not within [Dr. Cho's] specialty." R. 19; See 20 C.F.R. 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.). The ALJ also stated that there "is no evidence of deficits in adaptive functioning prior to age 22, as required to establish listing 12.05" and likewise "no evidence of traumatic brain injury or organic injury to establish a finding under listing 12.02." R. 12. The ALJ emphasized that Thomason "drives, completed forms for the application of benefits, and pays bills with checks." Id. Finally, the vocational expert testified that an individual with Thomason's vocational profile and functional limitations could perform the unskilled jobs identified even if he had trouble with reading, or was limited to simple, routine, repetitive job tasks. R. 50.

The ALJ's analysis shows that she considered multiple sources of psychological and intelligence evidence about Thomas in reaching her decision. Substantial evidence supports the ALJ's decision not to order a consultative psychological evaluation.

**C. Dr. Cho's Opinion**

Thomason argues that the ALJ failed to properly evaluate all of Dr. Cho's opinions pursuant to 20 C.F.R. § 404.1527(b) and (c). Specifically, Thomason asserts that the ALJ did not

---

[6] Her school records do show that in the seventh grade she was only reading at a third grade level. R. 290.

7

properly explain why she rejected Dr. Cho's opinion that Thomason could stand and walk for two to four hours during the workday and could only "occasionally or less" balance, stoop, kneel, crouch, and crawl, thus limiting Thomason to sedentary work.

The regulations require the ALJ to consider all medical opinions in the record. See 20 C.F.R §§ 404.1527(b) and (c); see also SSR 96-5p, 1996 SSR LEXIS 2, at *6, 1996 WL 374183, at *3 (July 2, 1996) ("An ALJ "is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner."); see also Monroe v. Colvin, __F.3d.__, No. 15-1098, 2016 WL 3349355, at *11 (4th Cir. June 16, 2016) (holding that the ALJ must provide specific, non-conclusory explanations for the weights assigned to medical opinions, so as to allow the district court to conduct "meaningful substantial–evidence review"). Medical opinions are "statements from physicians . . . or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

The ALJ adequately explained her consideration of Dr. Cho's consultative evaluation, enabling the court to conduct a meaningful review of the ALJ's opinion. See Monroe v. Colvin, 2016 WL 3349355, at *10 (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion"). The ALJ discussed the consultative exam performed by Dr. Cho, and gave Dr. Cho's opinion regarding Thomason's functional limitations partial weight. R. 19. The ALJ noted that Thomason presented with "a slow, but otherwise unremarkable gait and no assistive device." R. 18. Though Thomason complained of chronic knee and back pain from a previous motor vehicle accident and claimed she could not walk more than 50 yards, she

8

reported "no fracture, no surgeries, and no injections," got on and off the examination table without difficulty, demonstrated 5/5 strength in all extremities, and displayed full range of motion except for some limitation in the lumbar spine. Id.

The ALJ gave substantial weight to the opinions of state agency physicians McGuffin and Hartman.[7] R. 19. The ALJ specifically noted Dr. Hartman's observation that the "medical records revealed normal gait, station, strength, range of motion, and negative straight leg raising and there were no radiology studies to support the alleged impairments." Id. The ALJ further stated that the RFC assessment "is supported by the objective medical evidence that reveals basically normal physical examination findings and unremarkable mental status examinations." R. 19. Elsewhere in her opinion, the ALJ notes that Thomason's musculoskeletal examinations were basically within normal limits, including an emergency room visit in October 2012 which "revealed normal range of motion and strength." R. 18.

Reading the ALJ's decision as a whole, the ALJ accorded Dr. Cho's opinion due consideration in formulating Thomason's RFC. The ALJ limited Thomason to never climbing ladders, ropes, or scaffolds, and only occasional balancing, bending, stooping, kneeling, crouching, and crawling, the postural limitations imposed by Dr. Cho.[8] The ALJ imposed a slightly more significant lifting restriction than Dr. Cho, limiting Thomason to 10 pounds frequently and 20 pounds occasionally. R. 17, 271. Regarding Thomason's ability to stand and walk, the ALJ considered Dr. Cho's limitation of two to four hours, but chose to give more

---

[7] The ALJ mistakenly stated that both doctors determined Thomason retained the RFC for light exertional work. In fact, Dr. Hartman opined that Thomason retained the RFC for medium exertional work (R. 64–66) while Dr. McGuffin, on reconsideration, opined that Thomason retained the RFC for light work (R. 76–79).

[8] Dr. Cho indicated that Thomason should balance, stoop, kneel, crouch, and crawl only "occasionally or less." R. 271. However, because a claimant's RFC represents the most a claimant can do, the ALJ correctly limited Thomason's postural activities to "occasionally . . . balance, bend, stoop, kneel, crouch and crawl." R. 17; Hines v. Barnhart, 453 F.3d 559, 562 (4th Cir. 2006) ("RFC is a measurement of the most a claimant can do despite his limitations.").

9

weight to the findings of other medical sources, and specifically state agency physicians McGuffin and Hartman, who gave opinions which were more consistent with the medical records, which showed that Thomason had normal gait, station, strength, range of motion, and negative straight leg raising and that Thomason was capable of walking six hours in an eight hour workday. R. 19, 65, 76.

### D. Obesity

Thomason argues that the ALJ failed to properly evaluate the impact of her obesity on her impairments, as required by Social Security Ruling 02-1p. In support, Thomason asserts that Dr. Cho "specifically opined that [Thomason's] obesity directly impacts and reduces [her] RFC." Pls. Mem. Summ. J. at 11, Dkt. No. 15.

SSR 02-1p defines obesity as "a complex, chronic disease characterized by excessive accumulation of body fat." Titles II & Xvi: Evaluation of Obesity, SSR 02-1p, 2002 WL 34686281 at *2, 2002 SSR Lexis 1, at *3 (S.S.A. Sept. 12, 2002). SSR 02-1p also recognizes that obesity can cause limitations in all exertional and postural functions. Specifically:

> An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. [Obesity] may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected. . . .

2002 WL 34686281, at *6, 2002 SSR Lexis 1, at *16. When assessing a claimant's RFC, the ALJ must consider the "effect obesity has upon the [claimant's] ability to perform routine movement and necessary physical activity within the work environment" as the "combined effects of obesity with other impairments may be greater than might be expected without obesity." Id. However, there is no requirement in the regulations that the ALJ include a lengthy or precise analysis in the opinion. Richards v. Astrue, No. 6:11cv00017, 2012 WL 5465499, at

*6 (W.D.Va. July 5, 2012) (internal citations omitted). Rather, courts have found that the ALJ may rely upon medical records which adequately show a claimant's obesity and adopt the conclusions of doctors who are aware of the claimant's obesity. Id.; See also Martin v. Barnhart, No. 5:10cv00102, 2012 WL 663168, at *5 (W.D.Va. Feb. 29, 2012) report and recommendation adopted sub nom. Martin v. Astrue, No. 5:10cv00102, 2012 WL 994903 (W.D.Va. Mar. 23, 2012) (rejecting the claim that the ALJ failed to properly consider obesity where the ALJ discussed the claimant's testimony and took note of the medical opinions of record regarding her weight).

The ALJ found at step two that Thomason's obesity was a severe impairment and stated that she considered the obesity at all steps in the sequential analysis. R. 15. The ALJ recognized that the combined effect of obesity with musculoskeletal impairments can be greater than the effect of each impairment considered separately and also specifically cited to SSR 02-1p, writing, "An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. Further, the ALJ noted that "at a height of 63 inches, [Thomason weighed 209 pounds on consultative examination" and stated that Thomason's obesity "can reasonably be expected to cause back and neck pain." Id.

In assessing Thomason's RFC, the ALJ noted Dr. Cho's opinion that Thomason was limited by her obesity, as well as his diagnoses of "chronic low back pain secondary to obesity and degenerative joint disease of the knee exacerbated by obesity." R. 18. Thus, the ALJ clearly considered Thomason's obesity in determining her RFC and the ALJ recognized that she was required to evaluate Thomason's obesity in compliance with SSR 02-1p. Indeed, as noted, the ALJ found Thomason's obesity to be a severe impairment and included limitations in her RFC that adequately accounted for Thomason's obesity: no climbing of ladders, ropes, and scaffolds,

11

and only occasionally climbing stairs and ramps, balancing, bending, stooping, kneeling, crouching, and crawling. R. 17. The ALJ specifically stated that "the light exertional level with occasional postural limitations and unskilled work activity with occasional interaction considers the claimant's limitations from obesity and depression." R. 19. Further, as discussed above, the medical evidence does not support Thomason's claim that her obesity severely impairs her ability to walk, such that she is incapable of light work. Accordingly, substantial evidence supports the ALJ's RFC determination and I find that the ALJ properly considered Thomason's obesity in accordance with SSR 02-1p.

### E. Credibility

Thomason argues that the ALJ's credibility findings are not supported by substantial evidence. Thomason asserts that the activities cited by the ALJ to support her conclusion that Thomason is less than credible "are not inconsistent with [Thomason's] allegations of disability." Pls. Mem. Summ. J. at 12, Dkt. No. 15.

After a review of Thomason's treatment records and allegations of disability, the ALJ stated:

> I find that [Thomason's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Thomason's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

R. 18. The ALJ outlined her reasons for this determination, including that Thomason's allegations regarding the severity of her limitations were not corroborated by objective clinical findings, such as musculoskeletal and mental status exams. The ALJ also considered Thomason's medications, stating that "claimant has been prescribed and has taken the appropriate medications for the alleged impairments, which weighs in [her] favor, but the medical records reveal that the medications have been relatively effective in controlling the

12

claimant's symptoms." R. 18–19. The ALJ found that Thomason's work history, which includes no relevant work, did not enhance her credibility. R. 19. Finally, the ALJ stated that Thomason "described varied activities of daily living that were not limited to the extent one would expect, given the complaints of disabling symptoms and limitations" and referenced Thomason's acknowledgment that she "performed personal care, prepared simple meals, cared for a pet, paid bills, drove, shopped, socialized, played bowling games on PlayStation, and babysat her grandchildren, with all the physical and emotional endurance childcare requires." R. 19, 185–90; see Dolfax v. Astrue, 7:09-cv-67, 2010 U.S. Dist. LEXIS 37181, at *34, 2010 WL 1488116, at *11 (E.D.N.C. Mar. 18, 2010) (finding that activities of daily living are a highly probative factor in determining the credibility of a claimant's allegations) (citing Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)).

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and her ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Thomason's subjective allegations of her disabling symptoms and impairments are not conclusive on their own; rather, subjective complaints and statements of symptoms, like all other evidence of disability, are considered in the context of the Record as a whole. 20 C.F.R. §§ 404.1529, 416.929 (2014). If a claimant's statements are inconsistent with other evidence, the ALJ may find them less than fully credible and weight them accordingly. See SSR 96-4P, (July 2, 1996); SSR 96-7P, (July 2, 1996).

In this case, the ALJ found that Thomason's statements regarding the severity of her limitations were not wholly credible because they were not supported by the objective medical evidence, her treatment history, her work history, and her daily activities. R. 17–19. The ALJ's opinion includes a detailed consideration of Thomason's medical history along with Thomason's

own allegations. A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 68 (4th Cir. 2014) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

After a review of the entire record, I find that substantial evidence exists to support the ALJ's determination that Thomason's testimony is only partially credible, and that Thomason is capable of performing work at the level stated in the ALJ's opinion.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to the Honorable Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected

to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

                                              Entered: July 29, 2016

                                              *Robert S. Ballou*

                                              Robert S. Ballou
                                              United States Magistrate Judge