# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| ANN JUANITA THOMASON. *Plaintiff*, <br><br> v. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, *Defendant*. | CASE NO. 6:15-cv-00015 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

This matter is before the Court on the parties' cross Motions for Summary Judgment (dkts. 14 and 16), the Report & Recommendation of United States Magistrate Judge Robert S. Ballou (dkt. 21, hereinafter "R&R"), and Plaintiff's Objections to the R&R (dkt. 22, hereinafter "Objections to R&R"). Pursuant to Standing Order 2011-17 and 28 U.S.C. § 636(b)(1)(B), the Court referred this matter to U.S. Magistrate Judge Ballou for proposed findings of fact and a recommended disposition. Judge Ballou filed his R&R, advising this Court to deny Plaintiff's Motion for Summary Judgment and grant the Commissioner's Motion for Summary Judgment. Plaintiff timely filed his Objections, obligating the Court to undertake a *de novo* review of those portions of the R&R to which objections were made. *See* 28 U.S.C. § 636(b)(1)(B); *Farmer v. McBride*, 177 F. App'x 327, 330 (4th Cir. 2006). For the following reasons, I will overrule Plaintiff's Objections and adopt Judge Ballou's R&R in full.

## I. BACKGROUND

In October 2010, Thomason visited the Village Family Physicians complaining of hypertension, headache, and depression. R. 217. At this appointment, Thomason indicated that she had not had any medication for approximately four days and had been experiencing

1

increased depression and crying. R. 217. To help with these problems, the doctor prescribed her four different types of medication. R. 220.

In November and December 2011, Thomason returned to Village Family Physicians. R. 213. She continued to complain of hypertension, depression and headaches, along with new complaints of back and joint pain. R. 213. This examination revealed that she had pain and spasms in her lower back and swelling of her knee. R. 211.

In August 2012 and January 2013, Thomason once again returned to Village Family Physicians for medication refills. R. 225, 254. At these appointments, she complained of headaches, back and joint pain, and an inability to fall asleep. R. 225, 254. The examination revealed that Thomason was obese, but had normal posture, muscle tone, and strength in her arms and legs. R. 227. The mental status exam indicated that she had appropriate mood and affect, normal judgment and insight, and could perform basic computations and apply abstract reasoning. R. 227.

On May 23, 2012, Thomason protectively filed for SSI, claiming that her disability began on that same day due to back problems, knee pain, high blood pressure, depression, and migraines. R. 12, 161, 180. The state agency denied Thomason's application at the initial and reconsideration levels of review. R. 60–67, 69–79.

In September 2012, Richard J. Milan, Jr., Ph.D., state agency psychologist, indicated that Thomason's mental status examinations were within normal limits and her depression was controlled with medication. R. 63. Dr. Milan determined that Thomason "retain[ed] the ability to handle all levels of work tasks." R. 63. Similarly, in June 2013, Hillery Lake, M.D., state agency physician, determined that Thomason's mental impairment was non-severe, noting that Thomason's mental status exams were normal and she attended regular education classes in

school. R. 74. Two other state physicians, Dr. Michael Hartman and Dr. Robert McGuffin, also reviewed the record. Dr. Hartman determined that Thomason had the ability to perform work at the medium extertional level, while Dr. McGuffin found that Thomason could perform a limited range of light work, with postural limitations due to her knee and back pain. R. 66, 76–77.

On June 15, 2013, Sung-Joon Cho, M.D., performed a medical consultative evaluation on Thomason. R. 268–71. At this evaluation, Dr. Cho noted that Thomason had complained of chronic knee and back pain for approximately ten years, due to a vehicle accident. Dr. Cho, however, noted that Thomason walked with "otherwise unremarkable" gait and without assistance. Dr. Cho also indicated that Thomason had "some problems with reading." R. 269.

The physical exam revealed that Thomason was 5'3" tall and weighed 209 pounds. Dr. Cho noted that Thomason was "limited by her obesity" making it difficult for her to walk on her tip-toes and squat. R. 269–70. However, her motor function was a full five out of five in the upper and lower extremities, with no joint effusion or significant crepitus in her knee, and no evidence of major inflammation or instability, and her straight leg test was negative. R. 270. Dr. Cho noted that Thomason had full range of motion except for lumbar flexion, lumbar extension, and lateral flexion. R. 270.

Dr. Cho found that Thomason's affect, thought content, and memory were adequate; however, her general fund of information was limited and she had difficulty counting in intervals of three. R. 270. This limitation was consistent with Thomason dropping out at school at age fourteen due to pregnancy. R. 46, 270.

At the end of the examination, Dr. Cho diagnosed Thomason with obesity, chronic low back pain, degenerative joint disease of the knee exacerbated by obesity, and illiteracy. R. 270. Dr. Cho imposed the functional limitations of maximum standing and walking of two to four

3

hours and maximum lifting of ten pounds frequently and twenty pounds occasionally. R. 270–71. Dr. Cho also noted that Thomason should only occasionally balance, stop, kneel, crouch, and crawl and should avoid climbing. R. 271.

### A. The ALJ's Decision

On January 22, 2014, Administrative Law Judge ("ALJ") Ann V. Sprague held a hearing to consider Thomason's claims for SSI. R. 25–52. Counsel represented Thomason at the hearing, which included testimony from vocational expert Robert Jackson. On April 8, 2014, the ALJ entered her decision analyzing Thomason's claim.

The ALJ analyzed Thomason's claim under the required five-step inquiry. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). In this process, the ALJ determines whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that is severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in Appendix I of 20 C.F.R. Part 404, Subpart P, Appendix 1, and the impairment meets the duration requirement in 20 C.F.R. §§ 404.1509 and 416.909; (4) the claimant is able to perform her past relevant work; and (5) the claimant can perform other specific types of work. *Johnson v. Barnhart*, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520).

The claimant has the burden of production and proof in Steps 1–4. *See Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). If the claimant meets that burden, at Step 5 the burden shifts to the Commissioner "to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience." *Id.* If a determination of disability can be made at any step, the Commissioner need not analyze subsequent steps. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

4

The ALJ found that Thomason suffered from the severe impairments of obesity with back and neck pain, and depression. R. 14. The ALJ found that Thomason had the following limitations in the broad areas of functioning: (1) mild restriction in activities of daily living, (2) moderate difficulties in maintaining social functioning, (3) mild difficulties in maintaining concentration, persistence, or pace. R. 15–16. However, the ALJ found that Thomason had no episodes of decompensation of extended duration. R. 15–16; 20 C.F.R. § 416.920a(c).

From this finding, the ALJ determined that Thomason's impairments did not meet or medically equal a listed impairment, and specifically, Thomason's depression did not meet Listing 12.04. R. 15–16. From this determination, the ALJ concluded that Thomason retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 17. In this light work, the ALJ found that Thomason could only occasionally climb stairs and ramps, balance, bend, stoop, kneel, crouch, and crawl, and could never climb ladders, ropes, and scaffolds. However, the ALJ determined that Thomason could perform jobs that exist in significant numbers in the national economy, such as cleaner and packer. R. 20. Thus, the ALJ concluded that Thomason was not disabled. R. 21.

### C. Summary Judgment Motions and The Magistrate Judge's Report and Recommendation

After cross motions for summary judgment were filed, Magistrate Judge Robert S. Ballou held a hearing, (Dkt. 19), and on July 29, 2016, entered a report and recommendation.

Judge Ballou recommends denying Plaintiff's motion for summary judgment, and granting the Commissioner's motion. In his R&R, Judge Ballou addressed Plaintiff's contentions that the ALJ erred by: (1) refusing to grant Thomason's request for a psychological consultative examination with intelligence evaluation; (2) failing to properly evaluate Dr. Cho's

opinions; (3) failing to properly evaluate the impact of Thomason's obesity on her impairments; and (4) improperly discounting Thomason's credibility. After an extensive review of each argument, Judge Ballou concluded that all of the ALJ's determinations were supported by substantial evidence. Dkt. 21.

## II. STANDARD OF REVIEW

A reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). Substantial evidence requires more than a mere scintilla, but less than a preponderance, of evidence. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). A finding is supported by substantial evidence if it is based on "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Where "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the Commissioner's decision. *Johnson*, 434 F.3d at 653.

A reviewing court may not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the ALJ. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). "Ultimately, it is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, even if the court would have made

6

contrary determinations of fact, it must nonetheless uphold the ALJ's decision, so long as it is supported by substantial evidence. *See Whiten v. Finch*, 437 F.2d 73, 74 (4th Cir. 1971).

## III. DISCUSSION

In her objections to the R&R, Thomason argues that Judge Ballou's R&R erroneously found substantial evidence in support of the ALJ's conclusion of the following: (1) refusing to grant Thomason's request for a psychological consultative examination with intelligence evaluation; (2) failing to properly evaluate Dr. Cho's opinions; (3) failing to properly evaluate the impact of Thomason's obesity on her impairments; and (4) improperly discounting Thomason's credibility. Dkt. 22. Therefore, I will discuss each objection separately.

### A. ALJ's Refusal to Grant a Psychological Consultative Evaluation

Thomason argues that the R&R erroneously concludes that substantial evidence supports the ALJ's decision not to order a consultative psychological evaluation. Dkt. 22 at 1.

Following the hearing before the ALJ, the ALJ reviewed Thomason's school records and denied Thomason's request for this evaluation, stating that the "record is sufficient to support a decision on this claim." R. 12. Under the regulations, an ALJ has discretion in deciding whether to order a consultative examination. *Bishop v. Barnhart*, 78 F. App'x 265, 268 (4th Cir. 2003). A consultative exam is only needed when the evidentiary record before the ALJ is inadequate. *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).

Specifically, Thomason argues that the record before the ALJ only provided evidence for physical impairments and depression, but no analysis was provided of Thomason's IQ or illiteracy.

This is incorrect. The record before the ALJ was adequate, as it provided significant documentation to determine whether a consultative exam was necessary. For example,

7

Thomason indicated in her Disability Report that she never attended special education classes, and her school records indicate that she never was required to repeat a grade or receive special education. R. 47, 181, 279–87. From this report and school record, the ALJ found that "[a]lthough the evidence reflects low test scores and grades, [Thomason's] IQ in second grade was 80 and she progressed through the grades without special education support." R. 12.

To the extent that Dr. Cho's evaluation suggests that Thomason was illiterate, the ALJ considered this evaluation but found that "the diagnosis is not within [Dr. Cho's] specialty." R. 19; *see also* 20 C.F.R. 404.1527(c)(5). The ALJ also found that there "is no evidence of deficits in adaptive functioning prior to age 22, as required to establish listing 12.05" and likewise "no evidence of traumatic brain injury or organic injury to establish a finding under listing 12.02." R. 12. Finally, the ALJ noted that Thomason "drives, completed forms for the application of benefits, and pays bills with checks." R. 12.

Therefore, the ALJ's analysis shows consideration of multiple sources—from the Disability Report to school records—to determine whether the evaluation was necessary. Accordingly, substantial evidence supports the ALJ's decision to not request a physiological evaluation.

### B. ALJ's Evaluation of Dr. Cho's Opinion

In her second objection, Thomason argues that the R&R erroneously concluded that the ALJ adequately explained her consideration of Dr. Cho's consultative evaluation. Dkt. 22 at 3. This objection fails.

The regulations require the ALJ to consider all medical opinions in the record. 20 C.F.R. §§ 404.1527(b) and(c); *Monroe v. Colvin*, ___ F. 3d. ___, No. 15-1098, 2016 WL 3349355, at

8

*11 (4th Cir. June 16, 2016). An ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Id.* at *10.

While Thomason argues that the R&R "attempts to build a logical bridge for the ALJ," this is incorrect. The ALJ's decision flowed logically, as the ALJ adequately explained her consideration of Dr. Cho's consultative evaluation, thus enabling the court to conduct a meaningful review. *Id.* While it is true that the ALJ gave substantial weight to the opinions of Drs. McGuffin and Hartman, it cannot be said that no consideration was given to Dr. Cho.

The ALJ discussed the consultative exam performed by Dr. Cho. R. 18–19. The ALJ, however, gave Dr. Cho's opinion regarding Thomason's functional limitation only partial weight. R. 19. Specifically, the ALJ noted that Thomason moved with "a slow, but otherwise unremarkable gait and no assistive device." R. 18. The ALJ further discussed Dr. Cho's evaluation, stating that Thomason complained of pain from a prior vehicle accident, but Dr. Cho's reported of "no fracture, no surgeries, and no injections." R. 19. Furthermore, Thomason got on and off the examination table without difficulty, demonstrated five out of five strength in all extremities, and displayed full range of motion except for some limitation in the lumbar spine. R. 19.

The ALJ also considered Dr. Cho's opinion when considering Thomason's RFC. Specifically, the ALJ limited Thomason to never climbing ladders, ropes, or scaffolds, and only occasional balancing, bending, stooping, kneeling, crouching, and crawling. These were all postural limitations imposed by Dr. Cho. While other limitations were more expansive than Dr. Cho, these limitations were explained due to other medical evaluations.

Accordingly, the ALJ properly considered Dr. Cho's evaluation and provided significant explanation for her decision.

9

### C. ALJ's Consideration of Plaintiff's Obesity

In her third objection, Thomason argues that the R&R erroneously concluded that the ALJ properly considered Thomason's obesity under SSR 02-1p because she did not consider the impact of Thomason's obesity on her other impairments. Dkt. 22 at 5. This objection fails.

SSR 02-1p defines obesity as "a complex, chronic disease characterized by excessive accumulation of body fat." *Titles II & Xvi: Evaluation of Obesity*, SSE 02-1p, 2002 WL 34686281 at *2 (S.S.A. Sept. 12, 2002). When assessing a claimant's RFC, the ALJ must consider the "effect obesity has upon the [claimant's] ability to perform routine movement and necessary physical activity within the work environment" as the "combined effects of obesity with other impairments may be greater than might be expected without obesity." *Id.* However, there is no requirement in the regulation that the ALJ include a lengthy or precise analysis in the opinion. *Richards v. Astrue*, No 6:11cv00017, 2012 WL 5465499, at *6 (W.D. Va. July 5, 2012). The ALJ may rely upon medical records which adequately show a claimant's obesity and adopt the conclusions of doctors who are aware of the claimant's obesity. *Id.*

In this case, the ALJ found at step two of the analysis that Thomason's obesity was a severe impairment. R. 15. The ALJ further stated that she considered the obesity at all steps in the subsequent analysis. R. 15. In this analysis, the ALJ specifically cited SSR 02-1p and found that her obesity "can reasonably be expected to cause back and neck pain." R. 15.

In assessing Thomason's RFC, the ALJ considered Dr. Cho's opinion that diagnosed her with "chronic low back pain secondary to obesity and degenerative joint disease of the knee exacerbated by obesity." R. 18. The ALJ also specifically stated that "the light extertional level with occasional postural limitations and unskilled work activity with occasional interaction considers the claimant's limitations from obesity and depression." R. 19.

Accordingly, the ALJ properly considered Thomason's obesity as required by SSR 02-1p. *Richards,* 2012 WL 5465499, at *6.

### D. ALJ's Credibility Determination of the Plaintiff

Thomason's fourth objection argues that the ALJ's determination that Thomason was only partially credible was supported by substantial evidence. Dkt. 22 at 6.

It is not the role of this Court to determine whether Plaintiff's testimony was fully credible. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Rather, the question for the Court is whether the ALJ applied the proper legal standard in assessing Plaintiff's credibility, and whether the ALJ's decision is supported by substantial evidence. *Id.*; *see also Shifflet v. Colvin*, No. 13-112, 2015 WL 1893438, at *9 (W.D. Va. Apr. 27, 2015) (credibility determinations should be disturbed only if "exceptional circumstances" exist).

The ALJ determines through a two-step process whether a claimant is disabled. *Id.* at 594; *see* SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996). First, the ALJ must find "objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities, and which could reasonably be expected to produce the pain or other symptoms alleged." *Craig*, 76 F.3d at 594 (quotations and emphasis omitted). If such evidence is found, the ALJ must then evaluate "the intensity and persistence of the claimant's [symptoms], and the extent to which [they] affect[ ] her ability to work." *Id.* at 595. Among other factors, when evaluating the claimant's credibility the ALJ should consider all evidence in the record, including "[d]iagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists." SSR96–7p, 1996 WL 374186, at *5. The ALJ's determination "must contain specific reasons" that "make clear to the

11

individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." *Id.* at *4.

Here, the ALJ found that Thomason's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Thomason's] statements concerning the intensity, persistence, and limited effects of these symptoms are not entirely credible." R. 18. To support this conclusion, the ALJ noted that the allegations concerning the severity of her limitations were not corroborated by objective clinical findings, such as musculoskeletal and mental status exam. R. 18. Furthermore, the ALJ found that the medication prescribed for these impairments "have been relatively effective in controlling the [Thomason's] symptoms." R. 18–19. Finally, the ALJ stated that Thomason "described varied activities of daily living that were not limited to the extent one would expect, given the complaints of disabling symptoms and limitations" and referenced Thomason's acknowledgment that she "performed personal care, prepared simple meals, cared for a pet, paid bills, drove, shopped, socialized, played bowling games on PlayStation, and babysat her grandchildren, with all the physical and emotional endurance children care requires." R. 19, 185–90; *see also Dolfax v. Astrue*, 7:09-cv-67, 2010 WL 1488116, at *11 (E.D.N.C. Mar. 18, 2010) (finding that activities of daily living are a highly probative factor in determining the credibility of a claimant's allegations).

Accordingly, the ALJ provided specific reasons that "make[s] clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." SSR96–7p, 1996 WL 374186, *4.

## IV. CONCLUSION

12

After undertaking a *de novo* review of those portions of the R&R to which Plaintiff objected, I find that substantial evidence supports the ALJ's conclusions. Accordingly, I will enter an order overruling Plaintiff's Objections (dkt. 22), adopting the Magistrate Judge's R&R in full (dkt. 21), granting the Commissioner's Motion for Summary Judgment (dkt. 16), denying Plaintiff's Motion for Summary Judgment (dkt. 14), and dismissing and striking this action from the active docket of the Court.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record, and to United States Magistrate Judge Robert S. Ballou.

Entered this 23rd day of August, 2016.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE